IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAYSON HOWARD MOORE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:22-cv-0714-M-BT |
| | § | |
| CITY OF DALLAS, et al., | § | |
| Defendants. | § | |

**MEMORANDUM ORDER AND OPINION**

Before the Court in this *pro se* civil action under 42 U.S.C. § 1983, are separate motions to dismiss filed by all named Defendants: (i) Dallas Police Detective Jabari Howard (ECF No. 38); (ii) Dallas Police Officer Jason Webb (ECF No. 19); (iii) Dallas County District Court Judge Stephanie N. Mitchell-Huff (ECF No. 15); (iv) the City of Dallas, Texas (ECF No. 14); and (v) Pamela Griffin and Griffin & Associates LLC (ECF No. 30). Also before the Court is Plaintiff Jayson Moore's motion to disqualify Assistant U.S. Attorney Sarah E. Delaney from representing Howard in this action (ECF No. 35). For the reasons stated, the Court DENIES Moore's motion to disqualify Howard's counsel and GRANTS Defendants' motions to dismiss.

## I.    Background

In this lawsuit, Moore alleges Defendants conspired to "intentionally caus[e] or otherwise aid[ ] in his malicious prosecution for Production of Child Pornography." Am. Comp. 1 (ECF No. 7). He initiated this action on March 28, 2022—one year after a District Judge in this district dismissed the production charge against him. Am. Comp. 1 (citing *United States v. Moore*, N.D. Tex. Case No. 3:15-cr-00533-L). The District Judge included the dismissal in a Judgment sentencing Moore to time-served and a three-year term of supervised release after a jury convicted Moore of violating 18 U.S.C. §§ 922(g)(1), 924(a)(2), Felon in Possession of a

1

Firearm, and 18 U.S.C. §§ 922(g)(8), 924(a)(2), Possession of a Firearm by a Person Subject to a Domestic Violence Protective Order.[1] J. 1 (CR ECF No. 587).[2] Although Moore carefully avoids challenging his federal convictions in this civil action, he did file an appeal in the Fifth Circuit, *see* Notice Appeal (CR ECF No. 590), and that appeal is currently pending. *See Moore v. United States* (5th Cir.). A brief review of Moore's lengthy criminal case provides important context for the claims now before the Court.

### A.    Procedural History of Moore's Criminal Case[3]

On September 28, 2015, a United States Magistrate Judge in this district issued a federal warrant for Moore's arrest based on a criminal complaint and affidavit completed by Howard, charging Moore with a violation of 18 U.S.C. § 922(g)(1). (CR ECF No. 2). Moore was arrested on October 29, 2015, and he made his initial appearance in federal court the next day. Initial Appearance Min. Entry (CR ECF No. 8). The Magistrate Judge held a detention hearing and ordered Moore detained. Det. Hr'g Min. Entry (CR ECF No. 15); Order Temp. Det (CR ECF No. 11). On November 18, 2015, a grand jury returned a one-count indictment charging Moore with a violation of § 922(g)(1). Original Indictment (CR ECF No. 18).

---

[1] A Fifth Circuit panel recently held 18 U.S.C. § 922(g)(8) is unconstitutional under the Second Amendment to the United States Constitution, in light of *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). *United States v. Rahimi*, 2023 WL 2317796, at *1 (5th Cir. Mar. 2, 2023) (mandate issue date is Mar. 24, 2023). The Department of Justice issued a press release indicating it will seek "further review" of that decision. Press Release No. 23-136, Merrick Garland, Office of Att'y Gen., Statement from Att'y Gen. Merrick B. Garland Regarding *United States v. Rahimi* (Feb. 2, 2023), https://www.justice.gov/opa/pr/statement-attorney-general-merrick-b-garland-regarding-united-states-v-rahimi.

[2] The Court refers to the docket entries in Moore's criminal case, *United States v. Moore*, N.D. Tex. Case No. 3:15-cr-00533-L, as "CR ECF No."

[3] The Court takes judicial notice of the docket entries made in the criminal case "to establish the fact of such litigation and related filings." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998).

Within a week of the indictment, Moore's retained counsel sought leave to withdraw based on Moore's "repeated written and oral accusations against [his] Attorneys, alleging impropriety by Attorneys, who are allegedly working in concert with the United States Government to keep [Moore] 'illegally detained.'" Mot. Withdraw 1 (CR ECF No. 23). The Court allowed Moore's retained counsel to withdraw and appointed substitute counsel to represent him. Order Granting Mot. Withdraw (CR ECF No. 33). Over the course of the criminal proceedings, the Court appointed three different attorneys to represent Moore. (CR ECF Nos. 10, 34, 135).

On January 20, 2016, a grand jury returned a Superseding Indictment that included an additional charge of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). First Supers. Indictment (CR ECF No. 51). Around that time, Moore began filing *pro se* motions and sending letters to the Court accusing prosecutors of forging documents and committing other crimes, and further complaining of judicial misconduct by the various judges associated with his case. *See e.g.*, Mot. Requesting Justice (CR ECF No. 67); Emergc'y Mot. Requesting Writ (CR ECF No. 68); Mot. Remove Presiding Judge (CR ECF No. 71). He also accused his appointed counsel of conspiring with law enforcement officers, the federal prosecutor, and the Magistrate Judge to fraudulently charge and detain him without probable cause or due process. Mot. Requesting Fair Trial (CR ECF No. 70).

Those accusations and other behavior by Moore prompted Moore's appointed attorney to file a motion to determine Moore's mental competency, which the Court granted after conducting a hearing pursuant to 18 U.S.C. §§ 4241(e), 4247(d). (CR ECF No. 631). The Court then ordered a psychiatric and psychological examination of Moore. (CR ECF No. 631). Although Moore appealed that order, the examination took place while the appeal was pending,

and Moore was determined to be temporarily incompetent to stand trial. (CR ECF No. 113).

Later, after receiving additional evidence and conducting a second hearing, the Court concluded

that Moore was competent to stand trial. (CR ECF No. 632).

Moore then demanded to represent himself, and the Court conducted a *Faretta* hearing.

*See* Mot. *Faretta* Hr'g (CR ECF No. 126); *Faretta* Hr'g Min. Entry (CR ECF No. 131). The

Court determined that Moore "knowingly, voluntarily, and intelligently waived his right to be

represented by counsel," and granted his request to proceed *pro se*. Order *Faretta* Hr'g (CR ECF

No. 133). As his trial approached, Moore filed several motions, which the Court denied,

including a motion to dismiss the Superseding Indictment and a motion to suppress evidence on

the grounds that his arrest and the seizure of his property were unlawful. Mot. Dismiss (CR ECF

No. 199); Mot. Suppress (CR ECF No. 189).

On May 30, 2018, a grand jury returned a Second Superseding Indictment that dropped

the Production of Child Pornography count, leaving only a single count (Count One) of Felon in

Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Second Supers.

Indictment (CR ECF No. 197). Moore then proceeded to trial, *pro se*, and on August 7, 2018, a

jury convicted Moore on Count One of the Second Superseding Indictment. First Jury Verdict

(CR ECF No. 282).

Before the Court sentenced Moore, the United States Supreme Court entered its decision

in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), which held that, in a § 922(g) prosecution, the

government must prove both that the defendant knew he possessed a firearm and that he knew he

belonged to a category of persons barred from possessing a firearm. Because Moore's jury

instructions had not required such a showing, the government filed a notice stating that it would

not oppose Moore's motion for new trial. Gov.'s *Rehaif* Notice (CR ECF No. 352). The Court

vacated Moore's guilty verdict on July 18, 2019, and ordered a new trial. Order New Trial (CR ECF No. 358). The Court ordered Moore—who had been detained for forty-five months pending his first trial and sentencing hearing—released on conditions pending his second trial. Order Cond. Release (CR ECF No. 366).

On September 25, 2019, a grand jury returned another Superseding Indictment (CR ECF No. 403) charging Moore with one count of being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count One), as well as one count of Possession of a Firearm by a Person Subject to a Domestic Violence Protective Order, in violation of §§ 922(g)(8) and 924(a)(2) (Count Two). Moore again represented himself at the second trial and, on November 25, 2019, a jury found Moore guilty on both counts. Second Jury Verdict (CR ECF No. 489). The Court allowed Moore to continue on release with supervision pending his sentencing. Trial Tr. Vol. 5, 147:6 (CR ECF No. 511).

After multiple delays due to various motions by the parties, winter weather conditions in December 2020, and the COVID-19 Pandemic, the Court held Moore's forfeiture and sentencing hearings from March 22 through March 24, 2021. *See* Forfeiture Hr'g Min. Entry (CR ECF No. 576); Sentencing Hr'gs Min. Entry (CR ECF Nos. 584, 586). The Court sentenced Moore to time-served (forty-five months custody) and three years of supervised release as to Counts One and Two. J. 2 (CR ECF No. 587). The sentence of time-served constituted a variance under 18 U.S.C. § 3553(a) from the advisory guideline range of 51 to 63 months imprisonment. (CR ECF No. 627). The Court entered its Judgment on March 29, 2021. J. 1 (CR ECF No. 587). Moore filed a Notice of Appeal (CR ECF No. 590), and his appeal remains pending. *See Moore v. United States*, No. 21-10345 (5th Cir.).

**B.      Moore's § 1983 Claims**

Moore filed this civil action under 42 U.S.C. § 1983 on March 28, 2022, continuing his refrain of grievances against law enforcement officers and others involved in his criminal prosecution. *See* Compl. Although the gravamen of his claim is the dismissed Production of Child Pornography charge, it is clear Moore construes the charge as part of a broader conspiracy to violate his civil rights. *See* Am. Compl.

According to Moore, Howard "orchestrated [and] planned" the conspiracy to "subject[ Moore] to a lawless and oppressive judicial proceeding" and "deprive[ him] of the most fundamental rights secured to him in the United States Constitution." Am. Comp. ¶ 11, 13. The conspiracy allegedly began in 2015 when Moore's ex-girlfriend, an exotic dancer, encouraged her mother, a former Dallas police officer, to contact Howard "as part of a revenge plot" to have Moore "unlawfully arrested based on a false allegation that [Moore] was a felon in possession of numerous firearms." ¶¶ 16, 17.

First, Howard contacted an Irving Police Detective and reported that Moore, who lives in Irving, was under investigation for being a felon-in-possession and also for sex-trafficking. ¶ 18. After interviewing Moore's ex-girlfriend, the detective declined to pursue any charges. ¶ 19. Moore's ex-girlfriend then staged an alleged home burglary and reported to Irving police officers that Moore was the culprit, and that he stole her gun. ¶ 20. Although Moore proved his innocence with evidence that he was not in Irving on the night of the burglary, the investigation continued into the ex-girlfriend's missing gun. ¶ 22-24. This investigation uncovered information that someone sold several guns to an Irving pawn shop under Moore's name. ¶ 24. Irving police apprised Howard of this development. ¶ 25.

Armed with this information, Howard—allegedly "in [his] official capacity" as a Dallas police officer but "falsely posing as [a] federal ATF agent"—visited the Irving pawn shop to conduct an "unauthorized ATF investigation" into the pawned guns. ¶ 26. Howard interviewed a pawn shop employee who recalled Moore and a female companion visiting the store, and the employee identified Moore as the seller. ¶ 28. Howard presented the same employee with a photo line-up, and the employee again identified Moore as the seller. ¶ 29. Howard seized the guns Moore allegedly tried to pawn and left his City of Dallas business card with the pawn shop owner in case anyone inquired about the guns. ¶ 31. Howard then informed Irving police of an outstanding "ATF warrant" for Moore's arrest. ¶ 32.

On October 29, 2015, Irving police spotted Moore and conducted a "federal traffic stop." ¶ 32. Even though police "confirm[ed] with the NCIC (National Crime Information Center) that Moore had no outstanding warrants nor ATF warrant hits for his arrest," Irving police took Moore into custody and held him at the Irving City Jail for over 16 hours. ¶¶ 35-36. The next day, Irving jail staff booked Moore on a charge of "'Disturbing Public Peace' (*Which was an offense that literally never happened*)." ¶ 36 (emphasis in original).

On October 30, Howard and other law enforcement officers "wearing plain clothes and ATF shirts" presented themselves "as ATF agents working on behalf of the U.S. Government" and took "federal custody" of Moore and his property "despite the Officers [sic] not showing any federal credentials" or having a federal writ or warrant. ¶¶ 39-40. Howard transported Moore to the federal courthouse in Dallas for an initial appearance on "an ATF complaint." ¶¶ 41, 44. Howard delivered Moore's property—including his cellphone—to the Dallas Police Department property room. ¶ 47.

On November 30, Howard obtained a search warrant for Moore's cellphone from the presiding judge of the 291st District Court in Dallas County, Stephanie Mitchell-Huff, a former Dallas police officer. ¶ 51. Although the warrant stated it was filed in "Case No. 252541-2015, *State of Texas v. Jayson Howard Moore*," Moore and his aunt subsequently confirmed with the Dallas County Criminal Court Clerk's Office that "[Case No.] 252541-2015 was a false and invalid case number that did not appear anywhere in their Dallas County Criminal Court records." ¶ 93. Moore further alleges that the search warrant was "counterfeit," issued without probable cause, and that Judge Mitchell-Huff lacked jurisdiction or other authority to issue "a federal search warrant on behalf of the United States." ¶ 51.

Once he obtained the search warrant, Howard delivered Moore's cellphone to Webb for forensic analysis. ¶ 55. When Webb's search failed to uncover anything incriminating, ¶ 58, Howard and Webb allegedly planted a nude photo of a suspected minor on the phone and claimed it was uncovered during their forensic search. ¶ 59. The officers also conspired with Judge Mitchell-Huff to obtain a second search warrant to cover up their fabrication of the "incriminating evidence." ¶¶ 59, 61. Later, Judge Mitchell-Huff allegedly committed "felony perjury" when she provided an affidavit wherein she admitted to signing the "counterfeit" search warrants used to validate the "unlawful" seizure of data from Moore's phone. ¶ 94.

Howard produced the photo to federal prosecutors who used the evidence to obtain a Superseding Indictment charging Moore with Production of Child Pornography. (CR ECF No. 51). Although Moore does not name any federal prosecutors as defendants, he alleges that at least two Assistant U.S. Attorneys abused their positions and conspired with Howard to use the fabricated evidence to obtain the Superseding Indictment containing the child pornography charge. Am. Compl. ¶¶ 66-67. According to Moore, the prosecutors did so "with the ulterior

motive of punishing [ ] Moore, and to discredit his complaints of his unlawful arrest, and to force a continuance" of Moore's trial. ¶ 67.

Moore further alleges that federal prosecutors conspired with a reporter from the Dallas Morning News to publish "libelous articles" stating that Moore was "accused of coercing an under aged female to send him a nude text message." ¶ 74; *see also* Compl. ¶ 76. These articles "irreversibly harmed" Moore's reputation and caused him to suffer "personal humiliation, emotional distress, mental anguish, and a total loss of enjoyment in life." Am. Compl. ¶ 74. Moore contends that the articles were so "widely republished and promulgated" that they "surface at the top of every search engine on the internet" following a search of his full name or stage name. ¶ 75. "In order to live his day-to-day life comfortably" Moore allegedly has to use "a fictious alias to meet friends, love interests, or conduct business deals." ¶ 75.

Moore alleges that "a group of violent offenders" at his detention facility learned of the child pornography charges and threatened him. ¶ 77. Moore allegedly spent "the rest of his incarceration living in extreme fear and daily duress" having to defend himself against these violent offenders who set out to assault individuals charged with crimes against children. ¶ 78. Moore allegedly continues to suffer recurring nightmares of "being chased down by parents and groups of their children with knives." ¶ 78.

After a two-year delay—due to "unfounded" motions to determine whether Moore was competent to stand trial and represent himself—the District Judge held a *Faretta* hearing wherein the "CJA Attorney…admitted that in the two years of being [Moore's] defense counsel, he had never seen a police report explaining why [Moore] had been charged with Production of Child Pornography, which underscores the U.S. Attorney's Office lack of probable cause in charging [Moore] with the heinous crime." ¶ 73.

New prosecutors took over Moore's case and immediately sought to "do damage control." ¶ 81. These prosecutors offered to dismiss the child pornography charge if Moore would plead guilty to the firearms offense. ¶ 81. But Moore declined to entertain any plea agreement and declared his intention to proceed to trial on both charges "to clear his name and repair the harm done to his reputation." ¶ 81.

On May 9, 2018, during a discovery hearing, the government's attorney "announced in open court that the Government did not have a Child Pornography victim and was likely going to dismiss the case…and that someone was texting from Moore's cellular phone after he was already in federal custody, and the only individual in possession of the phone at the time was…[Howard]." ¶ 82.

Subsequently, the government "convened a grand jury to specifically request that the jurors dismiss the charge of Production of Child Pornography from [Moore's] previous indictment, despite Rule 48 of the Federal Rules of Criminal Procedure expressly requiring the U.S. Prosecutors to file leave of court and obtain permission from the District Judge before such charge can be dismissed." ¶ 83-84. Moore contends that the grand jury lacked jurisdiction to dismiss a charge from an indictment returned by another grand jury. ¶ 84. To cover up this wrongdoing, prosecutors allegedly conspired with Pamela Griffin, the owner of Griffin & Associates LLC, to certify the "counterfeit" federal indictment. ¶¶ 83, 86. Moore alleges Griffin certified the Second Superseding Indictment as "having been returned by a '*State*' grand jury in Phoenix, Arizona, Maricopa County, despite the '*State*' of Arizona having absolutely no authority to return a '*federal*' indictment." ¶ 85 (emphasis in original). According to Moore, Griffin and her company "illegally agreed with Howard and U.S. Prosecutors to Abuse the Legal Process and obtain a grand jury indictment against [ ] Moore using an out of state grand jury . . .

with the ulterior motive of exacerbating [ ] Moore's emotional distress, depriving him of his [Fifth] and [Fourteenth] Amendment protection against deprivation of liberty with due process of law, and supporting [ ] Howard's overall malicious prosecution against [Moore]." ¶ 86.

Meanwhile, Moore wrote two letters, one in November 2015 and the second in August 2018, to the City of Dallas claiming that there was a "conspiracy against his civil rights" ongoing between Howard, the Dallas Police Department, and several others. ¶ 63-65, 88. The City's Police Chiefs responded to Moore's letters stating, "the officers' actions were not in 'violation of department policies and procedures.'" ¶ 64. According to Moore, "[b]ased on [the Police Chiefs'] own words in the plain language of [their] letter[s]," the Police Chiefs "adopted Howard's illegal actions" and "affirmed that [they] had direct knowledge of a 'Pro Corruption Policy' within the department's policies and procedures." ¶ 65.

Based on all this alleged conduct, Moore seeks $76 million in damages from the City, Howard, Webb, Judge Mitchell-Huff, Griffin, and Griffin & Associates LLC for "Malicious Prosecution, Abuse of Process, Denial of Procedural Due Process, Intentional Infliction of Emotional Distress [IIED]," and conspiracy to commit the same, in violation of Moore's Fourth, Fifth, and Fourteenth Amendment rights. ¶ 1.

## II.   Preliminary Matters: Moore's Motion to Disqualify

An important aspect of Moore's § 1983 claim is his allegation that Howard was acting *solely* in his capacity as a Dallas Police Officer, *only* under color of state law, when he seized Moore's phone and allegedly manufactured evidence to support bringing federal charges against Moore for Production of Child Pornography. Moore insists that Howard was not acting in any federal capacity with respect to the events giving rise to his "malicious prosecution" claim. *See*

11

Pl.'s Mot. Disqualify 1 (ECF No. 35). Therefore, Moore objects to the U.S. Attorney's office representing Howard in this lawsuit, and he moves to disqualify Howard's counsel. *Id.* 1.

Moore objects that the U.S. Attorney's Notice of Appearance is not supported by the proof required to show Howard had been lawfully assigned to ATF during the period at issue in this lawsuit, and he urges the Court to find that any evidence of Howard's federal deputization is "counterfeit." *Id.* 2-3. These assertions are similar to those Moore made during his criminal case, and he directs the Court to evidence from his criminal trials to establish that Howard was acting as a Dallas Police Officer at the time of the events giving rise to his claims. *Id.* 5. Indeed, Moore complained—to no avail—throughout his criminal case that Howard was not authorized to act as a federal agent.

The government opposes Moore's motion to disqualify the U.S. Attorney as Howard's counsel. Gov't Resp (ECF No. 36). It disputes that the statutes on which Moore relies to support his disqualification arguments apply in this case, and it contends Moore's arguments fail on the merits. *See id.* That is, the government contends, significant evidence exists to establish that Howard was acting in his capacity as an ATF Task Force Officer at all times relevant to the allegations in this case. *Id.* 2. The Court agrees.

Contrary to Moore's strong and consistent objections, the record demonstrates that Howard was cross-deputized as a federal Task Force Officer and was acting in a dual capacity throughout his investigation of Moore and at all times relevant to the events described in Moore's amended complaint. *See id.* Among other things, Howard signed a criminal complaint on September 28, 2015, alleging Moore, a convicted felon, possessed four firearms "in violation of Title 18, United States Code, Section(s) 922(g)(1)." *Id.* App. 4. (ECF No. 37). The complaint, which is signed by a U.S. Magistrate Judge, plainly states that Howard is "a(n) Task Force

Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)" investigating

violations of federal law. *Id.* App. 4. Howard's affidavit "submitted for the purpose of securing

an arrest warrant for [Moore]" continues:

> I, Jabari D. Howard, being duly sworn, depose and state that: I am a Task Force
> Officer (TFO) in the Dallas Field Division and employed as a Gang Detective with
> the Dallas Police Department and have been assigned to the Dallas Police
> Department Gang Unit since January 2009. I began my law enforcement career
> with the Dallas Police Department in August 2003. Presently, I primarily
> investigate offenses involving gang members who commit state and federal
> firearms violations. In my twelve years as a law enforcement officer, I have been
> involved in numerous gang and firearms investigations. As a result, I am familiar
> with federal firearms laws.

*Id.* App. 5. The search warrants signed by Judge Mitchell-Huff contain an identical recital: "I am

a Task Force Officer (TFO) in the Dallas Field Division and employed as a Gang Detective with

the Dallas Police Department . . . . Presently, I primarily investigate offenses involving gang

members who commit state and federal firearms violations." Am. Compl., App. 3, 8 (ECF No.

8). Those search warrants provide probable cause to believe Moore committed a violation of

federal law, 18 U.S.C. § 922(g)(1). *Id.* App. 3-5, 8-10.

    Moore objects that this evidence is "counterfeit," and he accuses the government of using

"clever tactics" and improperly "conflating" his firearms case with the Production of Child

Pornography case which, he maintains, "were two completely separate issues." Pl.'s Reply 4.

(ECF No. 40). But this argument ignores Moore's allegations in his amended complaint, as well

as the documents he relies on to support his claims. Moore's attempts to separate the child-

pornography charge from the rest of his criminal case simply cannot stand. His entire civil

complaint depends on his allegations of a complex conspiracy that began in the summer of 2015

with a plot to have him arrested on "a false accusation that [he] was a felon in possession of

numerous firearms," and ended on March 29, 2021, when the District Judge entered a single

Judgment, imposing a sentence of time-served on the firearms charge and finally dismissing the child pornography charge. Am. Compl. ¶ 16.

Title 28 U.S.C. § 517 provides that "any officer of the Department of Justice[ ] may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." And under 28 C.F.R. § 50.15, the government may provide representation for a federal employee in a civil case "when the actions for which representation is requested reasonably appear to have been performed within the scope of the employee's employment and the Attorney General or his designee determines that providing representation would otherwise be in the interest of the United States." In this case, Moore's subjective belief as to whether Howard's conduct was—or was not—within the scope of his employment as federal Task Force Officer is irrelevant because "the language of the regulation makes clear it is for the Government to determine whether federal employees should receive representation." *Rodriguez v. Shulman*, 843 F. Supp. 2d 96, 100 (D.D.C. 2012); *see also Heimberger v. Pritzker*, 2014 WL 1050341, at *6 (S.D. Ohio Mar. 17, 2014) ("…[R]egardless of Plaintiff's subjective belief, or whether the Court has any doubts as to whether [Defendant's alleged conduct] really was performed 'within the course and scope of his employment,' the United States may, at its discretion, provide representation for Defendant." (citations omitted)). The government has determined that Howard was acting within the scope of his employment as a federal task officer when he investigated Moore in 2015 and assisted federal prosecutors in bringing Case No. 3:15-cr-0533-L. Therefore, the Court DENIES Moore's motion to disqualify Assistant U.S. Attorney Sarah E. Delaney from representing Howard.

## II.    Defendants' Motions to Dismiss

### A.  Legal Standards

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court may generally consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). In reviewing this material, the Court must "constru[e] all factual allegations in the light most favorable to the plaintiffs." *Kopp v. Klein*, 722 F.3d 327, 333 (5th Cir. 2013). However, the

Court will not credit "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

**B. Analysis**

1. Moore fails to state a claim against Howard.

Howard moves to dismiss Moore's claims against him because (i) he was a federal officer operating under color of federal law and cannot be liable under § 1983, Howard's Mot. Dismiss 9-10 (ECF No. 38); and, (ii) even if Moore's claims against Howard were construed as *Bivens* claims, they still fail as it would require the extension of *Bivens* to a new context. *Id.* 11-13. Howard further argues he is entitled to absolute or qualified immunity as to all of Moore's claims. Moore urges the Court to deny Howard's motion because the government did not offer any evidence that Howard was an ATF Task Force Officer. Pl.'s Am. Resp. Howard's Mot. 3. (ECF No. 42). Moore also argues the District Judge who presided over his criminal trial was biased; the government failed to comply with the Westfall Act or the Federal Tort Claims Act; and the United States should not be held liable for Howard's actions. *Id.* 4.

Section 1983 provides for redress for violations of an individual's civil rights by a person acting under color of state law. But, as discussed above, Moore's own allegations and the documents he submits in support of his claims demonstrate that Howard was cross-deputized as a federal Task Force Officer and was acting in that capacity at all times relevant to the events described in Moore's amended complaint. In particular, the criminal complaint signed by the Magistrate Judge and the search warrants signed by Judge Mitchell-Huff—which are referenced in Moore's amended complaint—show Howard was acting as an ATF Task Force Officer during his investigation of Moore for violations of federal firearms laws. Howard's investigation led to Moore's federal prosecution and conviction of a federal crime. While Howard was also

employed by the Dallas Police Department, "[c]ourts have consistently treated local law-enforcement agents deputized as federal agents and acting as part of a federal task force as federal agents." *Texas v. Kleinert*, 143 F. Supp. 3d 551, 562 (W.D. Tex. 2015); *Colorado v. Nord*, 377 F. Supp. 2d 945, 949 (D. Colo. 2005) (same); *see also Ivey v. Lyman*, 2005 WL 1397134, at *2 (N.D.N.Y. June 1, 2005) ("[D]efendant is employed by the Albany Police Department, and thus would generally be acting under color of state law in his capacity as a police officer. However, because he was working with the DEA and assigned to the DETF, he is considered to be acting as a federal agent."). And as a federal official acting under color of federal law, Howard is not subject to suit under § 1983. *See Broadway v. Block*, 694 F.2d 979, 981 (5th Cir. 1982) (holding federal officials are not liable under § 1983); *Bordeaux v. Lynch*, 958 F. Supp. 77, 83-84 (N.D.N.Y. 1997) ("[Defendants] were assigned to the Central New York Drug Task Force; a program which operates under the command of the federal Drug Enforcement Administration . . . . As federal employees, [Defendants] were not state actors and thus are not amenable to suit under Section 1983[.]"). Therefore, the Court must dismiss all of Moore's claims against Howard under § 1983. *See Broadway*, 694 F.2d at 981.

In *Bivens*, the Supreme Court recognized an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). And when a plaintiff erroneously pleads § 1983 claims against a federal officer, the Court may construe such claims as an action under *Bivens. Montgomery v. Deitelbaum,* 2010 WL 582146, at *2 (N.D. Tex. Feb. 18, 2010) (explaining that courts will apply *Bivens* or § 1983 "according to the actual nature of the claims," rather than the characterization by the plaintiff); *see also Guerrero v. Scarazzini*, 274 F. App'x 11, 12 n.1 (2d Cir. 2008) (holding that local officers "assigned to an FBI Joint Organized

17

Crime and Drug Enforcement Task Force" were "federally deputized for their Task Force work," and thus the claim was "properly brought" as a *Bivens* action); *Majors v. City of Clarksville*, 113 F. App'x 659, 660 (6th Cir. 2004) (construing § 1983 claim against "police officers who were acting as deputized Task Force Agents by the [DEA]" as a *Bivens* claim "in reality"); *Pike v. United States*, 868 F. Supp. 2d 667, 670, 677–678 (M.D. Tenn. 2012) (concluding that § 1983 claims against "state and local law enforcement officers who served as members of the Fugitive Task Force . . . [of] a program coordinated by the United States Marshal's Service" were "plainly *Bivens* claims, not § 1983 claims").

But even if the Court construed Moore's claims against Howard as *Bivens* claims, Moore would still fail to state a claim, as the Supreme Court has not applied *Bivens* to the types of constitutional violations alleged by Moore.

Unlike the multitude of claims that may be brought against state officials under § 1983, "a *Bivens* remedy is not available for all constitutional violations." *Butts v. Martin*, 877 F.3d 571, 587 (5th Cir. 2017). The Fifth Circuit recently confirmed that *Bivens* claims are currently recognized in only the following factual situations: "(1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment . . . .;" (2) "discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment . . .;" and (3) "failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (first citing *Bivens*, 403 U.S. at 389–90; then citing *Davis v. Passman*, 442 U.S. 228 (1979); and then citing *Carlson v. Green*, 446 U.S. 14 (1980)). And "[t]he Supreme Court has cautioned against extending *Bivens* to new contexts." *Byrd v. Lamb*, 990 F.3d 879, 881 (2021) (first citing *Hernandez v. Mesa*, (*Hernandez 2020*), 140 S. Ct. 735, 744 (2020) (holding that the

plaintiff's *Bivens* claim arose in a new context, and factors, including the potential effect on foreign relations, counseled hesitation with respect to extending *Bivens*); then citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1861 (2017) (holding that plaintiff's detention-policy claims arose in a new *Bivens* context, and factors, such as interfering with sensitive Executive-Branch functions and inquiring into national-security issues, counseled against extending *Bivens*)). "In fact, the Supreme Court has gone so far as to say that extending *Bivens* to new contexts is a 'disfavored' judicial activity." *Byrd*, 990 F.3d at 881 (citing *Abbasi*, 137 S. Ct. at 1857).

Although extending *Bivens* to new contexts is disfavored, "[t]he Supreme Court has provided a two-part test to determine when extension would be appropriate." *Id.* at 881. "First, courts should consider whether the case before it presents a 'new context.'" *Id.* (citing *Hernandez 2020*, 140 S. Ct. at 743). And virtually everything outside the specific circumstances presented in *Bivens, Davis*, and *Carlson* presents a "new context." *Oliva*, 973 F.3d at 442. (The Supreme Court's "understanding of a 'new context' is broad— "'even a modest extension' of the *Bivens* trilogy 'is still an extension.'") (first citing *Hernandez 2020*, 140 S. Ct. at 743; and then citing *Abbasi*, 137 S. Ct. at 1864).

The critical question is not whether the claim arises under the same amendment at issue in *Bivens, Davis*, or *Carlson*, but rather, whether the case "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 137 S. Ct. at 1859; *see also Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) ("Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'"). "Indeed, it is not enough even if 'a plaintiff asserts a violation of the same clause of the same amendment *in the same way*.'" *Oliva*, 973 F.3d at 442 (quoting *Cantú*, 933 F.3d at 422) (emphasis in original); *see also Canada v. United States*, 950 F.3d 299, 307 (5th

Cir. 2020) ("Canada contends that the Supreme Court recognized a *Bivens* claim for Fifth Amendment Due Process violations in *Davis*, and thus his claims do not present a new Constitutional context. His reliance on *Davis* is misplaced. The Supreme Court has made clear that claims for violations of Fifth Amendment rights can still be brought in a new context. To be sure, '[n]o one thinks *Davis*—which permitted a congressional employee to sue for unlawful termination in violation of the Due Process Clause—means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action.'" (quoting *Cantú*, 933 F.3d at 422) (internal citations omitted)). The Supreme Court has provided a nonexhaustive list of "meaningful differences," which include differences in "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 137 S. Ct. at 1859-60.

Then, "[o]nly where a claim arises in a new context should courts . . . proceed to the second step of the inquiry, and contemplate whether there are 'any special factors that counsel hesitation about granting the extension.'" *Id.* (quoting *Hernandez 2020*, 140 S. Ct. at 743). The Supreme Court has not defined "special factors counseling hesitation," *Id.* at 1857-58, but "[s]ome recognized special factors to consider include: whether there is a 'risk of interfering with the authority of the other branches,' whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy,' and 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of

allowing a damages action to proceed.'" *Byrd*, 990 F.3d at 881 (quoting *Hernandez 2020*, 140 S. Ct. at 743). "When a party seeks to assert an implied cause of action under the Constitution," as in this case, "separation-of-powers principles . . . should be central to the analysis." *Abbasi*, 137 S. Ct. at 1857.

Here, Moore's claims do not fall into one of the existing *Bivens* contexts. Moore brings claims under the Fourth, Fifth, and Fourteenth Amendments; the trio of cases arise under the Fourth (*Bivens*), Fifth (*Davis*), and Eighth Amendments (*Carlson*). First, while Moore's malicious prosecution claim and *Bivens* both involve the Fourth Amendment, Moore's claim is meaningfully different than the facts present in *Bivens*. *See Oliva*, 973 F.3d at 442-43. Moore does not allege the officers entered his home without a warrant or violated his rights of privacy, like the Defendants in *Bivens*. Moore's claim also involves different conduct by different officers from a different agency. Second, Moore's Fifth Amendment claim is based on an entirely different set of facts than *Davis*. *See Annappareddy v. Pascale*, 996 F.3d 120, 134 (4th Cir. 2021) (finding that the plaintiff's "fabrication . . . of evidence claims" are "far afield from the sex discrimination" claims in *Davis* (internal quotation marks omitted)). Last, Moore's Fourteenth Amendment claim definitively involves a new context because it arises out of an entirely different constitutional amendment. *See Austin v. United States*, WL 4099739, at *2 (E.D. Tex. Sept. 6, 2022) ("Plaintiff's Fourteenth Amendment claim presents a new context because the Supreme Court has not previously recognized an implied cause of action for Plaintiff's novel claim."). Therefore, none of Moore's claims can be embedded into *Bivens*, *Davis*, or *Carlson*. *See Cantú*, 933 F.3d at 423.

Further, there are special factors counseling hesitation in extending the *Bivens* remedy to this new context, such as the availability of alternative remedies, the length of time Congress has

gone without creating a *Biven*-type remedy, and separation of powers. *See* Howard's Mot. 15-16. For example, the Federal Torts Claim Act (FTCA) was specifically enacted to address torts committed by federal officers. *See* 28 U.S.C. § 2680(h); *Cantú*, 933 F.3d at 423; *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021) (noting that the FTCA provides an avenue to pursue monetary claims for damages for negligent or wrongful acts committed by government employees); Howard's Mot. Dismiss 23 ("Moore's 'own conduct shows there is an alternative remedial scheme [i.e., FTCA] for his claims.'") (quoting *Oliva*, 973 F.3d at 444 (noting the plaintiff had filed an FTCA claim about the issues in the lawsuit and explaining the existence of the FTCA "weighs against inferring a new cause of action" under *Bivens*)). And, even if the FTCA is not available, "[t]he Supreme Court has been clear that the alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would." *Oliva*, 973 F.3d at 444 (citing *Minneci v. Pollard*, 565 U.S. 118, 129 (2012) (Breyer, J.)).

Additionally, "Congress's decision not to provide a judicial remedy does not compel [the court] to step into its shoes." *Hernandez 2020*, 140 S. Ct. at 750. "[T]he length of time Congress has gone without statutorily creating a *Bivens*-type remedy for this context," despite "the existence of a statutory scheme for torts committed by federal officers," is instructive. *Cantú*, 933 F.3d at 423 (first citing 28 U.S.C. § 2680(h); then citing *Abbasi*, 137 S. Ct. at 1858). "Because Congress has long been on notice that the Supreme Court is disinclined to extend *Bivens* to new contexts, its 'failure to provide a damages remedy' here suggests 'more than mere oversight.'" *Id.* (first citing *Abbasi*, 137 S. Ct. at 1857, 1862; and then citing *De La Paz v. Coy*, 786 F.3d 367, 377 (2015)); *accord Oliva*, 973 F.3d at 443-44 ("Likewise, we have emphasized that 'the existence of a statutory scheme for torts committed by federal officers' weighs against inferring a new cause of action.").

Lastly, the Court finds that extending *Bivens* to the new contexts contemplated by Moore's claims would risk interfering with the authority of the legislative branch, which is in the best position to "consider and weigh the costs and benefits of allowing a damages action to proceed," *Byrd*, 990 F.3d at 881 (citation omitted), and to determine "if the public interest would be served by imposing a new substantive legal liability." *Abbasi*, 137 S. Ct. at 1857 (citation and quotation marks omitted). "This special factor gives [this Court] 'reason to pause' before extending *Bivens*." *Byrd*, 990 F.3d at 882 (citing *Hernandez 2020*, 140 S. Ct. at 743). The Fifth Circuit similarly held that separation of powers is a special factor to consider "because Congress has not legislated to extend the reach of *Bivens*." *Watkins v. Three Admin. Remedy Coordinators*, 998 F.3d 682, 686 (5th Cir. 2021) (declining to extend Bivens to include the plaintiff's Fourth Amendment claim because of the availability of other remedies (FTCA) and because Congress has not done so).

In sum, Moore's claims represent a new context, and special factors counsel against expanding *Bivens* to include them. The Court thus GRANTS Howard's motion to dismiss and dismisses with prejudice Moore's claims against Howard. The Court pretermits consideration of Howard's qualified immunity arguments because whether a claim is cognizable under *Bivens* is "antecedent" to the question of qualified immunity. *Hernandez v. Mesa* (*Hernandez I*), 137 S. Ct. 2003, 2006 (2017).

2.  <u>Judge Mitchell-Huff is entitled to judicial immunity.</u>

Judge Mitchell-Huff argues that "[b]ecause Plaintiff seeks damages for judicial acts that were within [her] jurisdiction, all of his claims against her are barred by judicial immunity." Judge Mitchell-Huff's Br. Supp Mot. Dismiss 5. (ECF No. 16). She moves to dismiss Moore's claims against her under Rule 12(b)(1) for lack of subject-matter jurisdiction. However, the Fifth

Circuit analyzes motions to dismiss based on immunity under Rule 12(b)(6), rather than Rule 12(b)(1), because "the arguments for immunity are attacks on the existence of a federal cause of action." *Morrison v. Walker*, 704 F. App'x 369, 372 n.5 (5th Cir. 2017) (first citing *Daniel v. Ferguson*, 839 F.2d 1124, 1127 (5th Cir. 1988) ("[W]hen a defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper procedure . . . is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case."); and then citing *Ballard v. Wall*, 413 F.3d 510, 514-15 (5th Cir. 2005) (deciding motion to dismiss raising judicial immunity under Rule 12(b)(6))).

Regardless of the procedural vehicle used to consider Judge Mitchell-Huff's argument, she is correct that judges are entitled to absolute immunity for actions taken within the scope of their jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996). A judge, of whatever status in the judicial hierarchy, is immune from suit for damages resulting from any act performed in a judicial role, *Ammons v. Baldwin*, 705 F.2d 1445, 1447 (5th Cir. 1983), even if the judge is accused of acting maliciously and corruptly, *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

Judicial immunity can be overcome in two limited circumstances. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). First, "a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity"; and second, "a judge is not immune from actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties." *Stump*, 435 US at 362.

Here, Moore accuses Judge Mitchell-Huff of executing "counterfeit" search warrants. However, that action—signing a search warrant—is an action within the judicial capacity of a

state court judge. *Burns v. Reed*, 500 U.S. 478, 492 (1991) ("[T]he issuance of a search warrant is unquestionably a judicial act."). And Judge Mitchell-Huff did not act in the "complete absence of all jurisdiction" when she executed the search warrants. To the contrary, issuing search warrants is squarely within Judge Mitchell-Huff's jurisdiction, as the presiding judge of the 291st Judicial District Court (Dallas County). *See* Tex. Const., art. V, § 8; Tex. Code Crim. Pro. arts. 2.09, 18.01-02; *see also Blakely v. Andrade*, 360 F. Supp. 3d 453, 476 (N.D. Tex. Jan. 23, 2019). Even accepting Moore's allegations as true and presuming the presence of procedural error and malice—this would not overcome her judicial immunity. *See Stump v. Sparkman*, 435 US 349, 356–57 (1978); *Harlow v. Fitzgerald*, 457 US 800, 807 (1982); *Mireles*, 502 US at 11; *Malina v. Gonzales*, 994 F.2d 1121, 1125 (1993); *Skelton v. Camp*, 234 F.3d 292, 296 n.2 (5th Cir. 2000).

Moore's allegations of Judge Mitchell-Huff's involvement in the conspiracy are based solely on the assertion that Judge Mitchell-Huff issued counterfeit search warrants. Even the felony perjury accusation relies on the search warrants being counterfeit. However, Judge Mitchell-Huff is entitled to judicial immunity from these alleged judicial actions which were taken within the scope of her jurisdiction. Therefore, the Court GRANTS Judge Mitchell-Huff's Motion to Dismiss under Rule 12(b)(6) and dismisses with prejudice all of Moore's claims against Judge Mitchell-Huff.

3.  <u>Officer Webb is entitled to qualified immunity as to Moore's § 1983 claims for abuse of process, IIED, and Fourth Amendment malicious prosecution.</u>

Webb moves to dismiss all claims against him in the Amended Complaint based on his entitlement to qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam). Qualified immunity "gives government officials breathing

25

room to make reasonable but mistaken judgments[ ] and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (per curiam).

Plaintiffs bear the burden of establishing that individual defendants are not entitled to qualified immunity. *See, e.g.*, *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). "Once a defendant raises a qualified-immunity defense, the burden shifts to the plaintiff to show that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time. *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011))). The "clearly established" prong is difficult to satisfy. *See Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (calling the second prong "a doozy"). A right is "clearly established" only if it "is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11. The court must define the right "with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503, (2019) (per curiam) (citations omitted). A case "directly on point" is not required, but "there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (citations omitted). The Supreme Court "repeatedly" has told courts "not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742; *Mullenix*, 577 U.S. at 12 (citations omitted) (Courts are to undertake that inquiry "in [the] light of the specific context of the case, not as a broad general proposition." (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004))).

Moore asserts claims against Webb for malicious prosecution, abuse of process, and IIED. Webb argues that these claims must be dismissed because they are "common law torts

under Texas law, not constitutional violations." Webb's Mot. Dismiss 5. Webb is correct with respect to Moore's claims for abuse of process and IIED. The Fifth Circuit has made clear that "there is no constitutional right to be free from abuse of process." *Morgan v. Chapman*, 969 F.3d 238, 247 (5th Cir. 2020). Similarly, IIED claims are not cognizable under § 1983, because the infliction of emotional harm is not, in and of itself, a constitutional tort. *See e.g., Wolf v. English*, 2000 WL 633588, at *2 n.2 (5th Cir. Apr. 28, 2000) ("[Plaintiff] does not have a constitutional right to be free from . . . emotional distress, and therefore he cannot assert a claim for such damages under § 1983."); *Shinn ex rel. Shinn v. Coll. Station ISD*, 96 F.3d 783, 786 (5th Cir. 1996) ("There is no constitutional right to be free from emotional distress."). Therefore, Webb is entitled to qualified immunity as to Moore's § 1983 claims for abuse of process and IIED.

Until recently, a malicious prosecution claim was not cognizable under § 1983, *see Castellano v. Fragozo*, 352 F.3d 939, 953–54 (5th Cir. 2003) (en banc), but last year the Supreme Court recognized that litigants may bring a Fourth Amendment malicious prosecution claim under § 1983. *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022); *Payton v. Town of Maringouin*, 2022 WL 3097846, at *3 (5th Cir. Aug. 3, 2022) (acknowledging that although prior Fifth Circuit cases have expressly held that there is no free-standing § 1983 claim for malicious prosecution, the Supreme Court recently recognized such a claim in *Thompson*). The Court identified three minimum elements to common law malicious prosecution claims, "(i) the suit or proceeding was 'instituted without any probable cause'; (ii) the 'motive in instituting' the suit 'was malicious,' which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution terminated in favor of the accused. *Thompson*, 142 S. Ct. at 1338 (citing T. Cooley, Law of Torts 181 (1880)). Further, "[b]ecause this claim is housed in the Fourth Amendment, the plaintiff also has to prove

27

that the malicious prosecution resulted in a seizure of the plaintiff." *Id*. at 1337 n.2 (citing *Manuel v. Joliet*, 580 U.S. 357, 365–366 (2017)).

However, this right was not clearly established until the Supreme Court's 2022 decision in *Thompson. See Morgan*, 969 F.3d at 245–46 ("There is no constitutional right to be free from malicious prosecution."); *Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. Oct. 23, 2020) ("[T]here is no freestanding right under the Constitution to be free from malicious prosecution….There is no independent constitutional claim for malicious prosecution."). Therefore, Webb is entitled to qualified immunity as to Moore's § 1983 claim for malicious prosecution under the Fourth Amendment.

The Fifth Circuit also recognizes that the Fourteenth Amendment guarantees a "due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015); *see also Morgan*, 969 F.3d at 250. "Deliberate framing of a person by the state offends the most strongly held values of our nation," and, therefore, is shocking to the conscience. *Cole*, 802 F.3d at 772–73. This right was clearly established by at least 2015, when Moore alleges Webb fabricated, or conspired to fabricate, evidence of child pornography and plant it on his phone. *See Brown v. Miller*, 519 F.3d 231, 237 (5th Cir. 2008) ("[T]he right of criminal defendants to be free from false or fabricated evidence was well settled by 1959 or earlier."). Thus, Webb is not entitled to qualified immunity as to Moore's § 1983 claim for malicious prosecution under the Fourteenth Amendment.

4. Moore's § 1983 claim under the Fourteenth Amendment is barred by limitations.

Although the statute of limitations is an affirmative defense, a defendant may move for dismissal under Rule 12(b)(6) if the facts giving rise to this defense "appear[ ] on the face of the

complaint." *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (per curiam) ("If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper."); *see also Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 253-54 (5th Cir. 2021) (holding that a court may grant a motion to dismiss based on limitations when it is evident from the pleadings that the action is time-barred); *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.").

"Section 1983 claims are subject to a state's personal injury statute of limitations." *Reed v. Goertz*, 995 F.3d 425, 431 (5th Cir. 2021). In Texas, the statute of limitations for personal injury claims is two years. Tex. Civ. Prac. & Rem. Code § 16.003(a). "Although state law provides the limitations period for a [§ 1983] claim, federal law determines when the claim accrues." *Turnage v. Britton*, 29 F.4th 232, 244 (5th Cir. 2022). And under federal law, due-process-fabrication-of-evidence claims accrue when the underlying criminal proceedings terminates in the defendant's favor. *See, e.g., McDonough v. Smith*, 139 S. Ct. 2149, 2154–55 (2019) ("The statute of limitations for a fabricated-evidence claim like McDonough's does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor."); *Brown v. City of Hous.*, 297 F. Supp. 3d 748, 763 (S.D. Tex. 2017) (same).

In *Thompson*, the Supreme Court "flesh[ed] out what a favorable termination entails"—albeit in the context of a Fourth Amendment claim under § 1983 for malicious prosecution. *Thompson*, 142 S. Ct. at 1335. The Court determined that a favorable termination occurs when the "prosecution end[s] without a conviction." *Id.* at 1335. For example, when "the prosecutor

abandoned the criminal case, or the court dismissed the case without providing a reason." *Id.* An acquittal is not required, nor is a dismissal accompanied by a statement from the judge that the evidence was insufficient. *Id.*

Moore argues that he did not obtain a favorable termination of the Production of Child Pornography charge until March 29, 2021, when the District Judge signed the Judgment that formally dismissed that charge. But any cause of action under the Fourteenth Amendment accrued much earlier than that. Moore alleges that the government's attorney "announced in open court" on May 9, 2018, that the government did not have a child pornography victim and "was likely going to dismiss the case." Am. Compl. ¶ 82. On May 30, 2018, the government "convened a grand jury to specifically request that the jurors dismiss the charge of Production of Child Pornography from [Moore's] previous indictment." ¶ 83-84; s*ee also* Second Supers. Indictment. Moore proceeded to trial solely on the Felon in Possession charge on August 1, 2018. Trial Tr (CR ECF No. 264). Thus, it is clear—from the facts pleaded and those judicially noticed—that Moore obtained a favorable termination of the Production of Child Pornography charge when the prosecutor abandoned that charge, which, at the latest, occurred in 2018. Because Moore waited more than three years—until March of 2022—to file his claim, it is barred by limitations. The Court must dismiss Moore's § 1983 claim under the Fourteenth Amendment as untimely.

5. Moore failed to plead sufficient facts to state a claim against the City under *Monell.*

The City moves to dismiss Moore's claims against it on grounds that Moore's amended complaint pleads no facts from which the Court can infer his alleged constitutional deprivations were the result of official City policy. City's Mot. Dismiss 8.

While § 1983 claims may be brought against municipalities where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," municipalities cannot be held liable solely for employing a tortfeasor; that is, they "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690–91 (1978); *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*." (emphasis in original)). This is because "under § 1983, local governments are responsible only for their own illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). And "[t]hey are not vicariously liable under § 1983 for their employees' actions." *Id.* (citations omitted); s*ee also Pembaur*, 475 U.S. at 479 ("Congress . . . doubt[ed] its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others."). Requiring municipal-liability plaintiffs to identify an allegedly unconstitutional municipal policy or custom "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cty. Comm'rs*, 520 U.S. at 403–04 (citing *Monell*, 436 U.S. at 694). "To prevent municipal liability . . . from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410. Accordingly, "[a]s is generally the case in § 1983 cases, it is far more difficult for [a] plaintiff to establish municipal liability . . . than to establish individual liability." *Ayers v. City of Holly Springs*, 2006 WL 2943295, at *4 (N.D. Miss. Oct. 13, 2006); *see also Jackson ex rel. Martin v. Town of Tutwiler*, 2018 WL 6033596, at *3 (N.D. Miss. Nov. 16, 2018) ("[T]his court acknowledges that

31

federal law does, in fact, make it quite difficult for plaintiffs to recover against municipalities in § 1983 cases."). Though the Court does not require "proof" of any element at the motion-to-dismiss stage, a "plaintiff[ ] must allege facts that support the elements of the cause of action in order to make out a valid claim." *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (per curiam); *see also Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) ("However, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1216 at 156–59)).

To state a claim for municipal liability under § 1983, "a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Valle v. City of Hous.*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 691). A plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541-42 (quoting *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002)). "[I]solated unconstitutional actions by municipal employees will almost never trigger [municipal] liability." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (first citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (per curiam); and then citing *McKee v. City of Rockwall*, 877 F.2d 409, 415 (5th Cir. 1989)).

With respect to the first prong, a plaintiff sufficiently alleges an official policy exists by pleading facts that demonstrate:

> (1) a policy statement, ordinance, regulation, or decision . . . [was] officially adopted and promulgated by the municipality's lawmaking officers or by an official

to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents a municipal policy.

*Burge v. Saint Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (1984)); *see also Bd. of Cty. Comm'rs*, 520 U.S. at 404 (citations omitted) ("Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.").

Under the second prong, the policymaker possessing actual or constructive knowledge must have "the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988); *see also Valle*, 613 F.3d at 542. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481. Last, under the third prong, a plaintiff must establish that "the municipal action was taken with the requisite degree of culpability and . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs*, 520 U.S. at 404.

In this case, Moore does not allege that any City employees acted pursuant to any official written policy. Rather, he relies on two unofficial sources of policy: the City's Police Chiefs' dismissive responses to his letters about Howard's alleged unconstitutional actions. Am. Compl. ¶¶ 63-65, 88-90. Moore complains that, by failing to act in response to his letters, the Chiefs adopted Howard's acts and promoted the City's unofficial "Pro Corruption Policy." ¶¶ 63-65, 88-90 ("[D]elegated Policymaker [Dallas Police Chief] adopted Howard's illegal actions, which were done in his official capacity as a Police Officer employed by the City of Dallas, as being permissible within the departmental policies and procedures of the Dallas Police Department. In

33

doing so, [Chief] affirmed that he had direct knowledge of a "Pro Corruption Policy" within the department's policies and procedures which supported and made it permissible for Detective Howard to inflict his unconstitutional practices on Mr. Moore."). These allegations are insufficient to state a claim under *Monell*.

Moore further fails to plead facts that sufficiently connect the Chiefs to the allegedly unconstitutional policy. Although he identifies the Chiefs as "delegated Policymakers," he alleges no facts to explain how, when, or by whom the specific authority was delegated. *See Moreno v. City of Dallas*, 2015 WL 3890467 *4 (N.D. Tex. June 18, 2015); *see also Hughes v. City of Dallas*, 2020 WL 4670659, at *4 (N.D. Tex. Aug. 11, 2020) (Boyle, J.) (declining to accept FCR "to the extent that it finds that Hughes has alleged a plausible claim of municipal liability against the City of Dallas" where "Hughes's amended complaint lack[ed] . . . factual allegations to show that it is plausible that Chief Brown was a final policymaker"). And to the extent Moore relies on the Chiefs' "adoption," or ratification, of Howard's acts, he does not allege the type of extreme factual situation where ratification supports municipal liability. *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *see also Zarnow v. City of Wichita Falls,* 614 F.3d 161, 169 (5th Cir. 2010) (holding no ratification where municipality defended constitutionality and propriety of officers' actions, despite court's later determination that the officers' actions violated the Fourth Amendment); *Medina v. Ortiz,* 623 F. App'x. 695, 701 (5th Cir. 2015) (holding no ratification where the sheriff accepted an officer's use of force report, refused to turn over evidence until a lawsuit was filed, and defended the deputies' actions in the case).

Moore fails to sufficiently plead that the City has a custom, or unwritten policy, giving rise to municipal liability, and that the City acted with deliberate indifference in perpetuating that

policy. "An official policy 'usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Covington v. City of Madisonville*, 812 F. App'x 219, 225 (2020) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)). A "pattern of conduct" is necessary when the municipal actors are not policymakers. *Zarnow*, 614 F.3d at 169.  "A pattern requires similarity and specificity; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question . . .. A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (2009). "If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Id.* Here, Moore relies on only two instances when Dallas Police Chiefs refused to further investigate his complaints of Howard's misconduct to establish a purported Pro-Corruption policy. But these two instances fall far short of establishing the necessary pattern. *See Peña v. City of Rio Grande*, 879 F.3d 613, 622 n.14 (2019) ("[A] plausible claim requires more than a recitation of the incident in which the plaintiff was personally involved."); *Fuentes v. Nueces County*, 689 F. App'x 775, 778 (5th Cir. 2017) ("Although there is no rigid rule regarding numerosity, [the Fifth Circuit has found] that 27 prior incidents of excessive force over a three-year period . . . and 11 incidents offering 'unequivocal evidence' of unconstitutional searches over a three-year period . . .were not sufficiently numerous to constitute a pattern.").

Moore has failed to allege that he suffered a violation of his constitutional rights due to any official City policy. Therefore, the Court must dismiss his claims against the City.

6. Moore fails to state a claim against Griffin or Griffin & Associates LLC.

Moore alleges that in May 2018 Griffin & Associates produced a "counterfeit" indictment for the Northern District of Texas using an Arizona grand jury, and that Griffin personally transcribed the grand jury proceedings "for the County of Maricopa, in the State of Arizona." Am. Compl. ¶¶ 99-104, 107-108, 111-112. Based on this alleged conduct Moore asserts claims against Griffin and Griffin & Associates under § 1983 for abuse of process, denial of procedural due process, IIED, and conspiracy to commit abuse of process and to commit IIED. ¶¶ 99-104, 107-108, 111-112. While it is apparent that Moore fundamentally misunderstands the grand jury transcript, the Court need not address this matter because his claims fail for other reasons.

To state a claim under § 1983, a plaintiff must allege that a defendant acted "under color" of state law. 42 U.S.C. § 1983. Only "state actors" may be sued for federal civil rights violations. *Id.* Private parties become "state actors" only when their conduct is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Filarsky v. Delia*, 566 U.S. 377, 383 (2012) ("Anyone whose conduct is 'fairly attributable to the State' can be sued as a state actor under § 1983.") (citing *Lugar*, 457 U.S. at 937). The phrase "fairly attributable to the State" means (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937.

36

Numerous courts have held that private court reporters are not "state actors" for § 1983 purposes. *See Westbrook v. Barclay Ct. Rep.*, 591 F. App'x. 514, 514-15 (7th Cir. 2015); *Yevstifeev v. Steve*, 730 F. Supp. 2d 308, 310 (W.D.N.Y. 2010); *White v. Wilson*, 2011 WL 2039090, at *2 (D.N.J. May 23, 2011); *Moss ex rel. Moss v. Unknown TN DHS APS Comm'rs*, 2009 WL 2762051, at *2 (M.D. Tenn. Aug. 25, 2009); *cf. Hieshetter v. Sawyer,* 2014 WL 1875119, at *5 (W.D. Mich. May 8, 2014) ("A court reporter employed by the state acts under color of state law, while independent contractors do not."); *Burroughs v. Dorn,* 2013 WL 3820673, at * 4 (E.D.N.Y. July 22, 2013) (holding a court reporting and transcription firm utilized in traffic violations hearings before the Department of Motor Vehicles is a private corporation, not a state actor); *Yevstifeev*, 730 F. Supp. 2d at 310–11 (holding defendant freelance court reporter's alleged alterations in transcripts and delay in supplying them to arrestee did not constitute state action, because the court reporter was not employed by the state unified court system). And here, Moore does not allege facts sufficient to establish that Griffin and "her privately owned Arizona based stenography company," Am. Compl. ¶ 84, Griffin & Associates are state actors. Moore does not allege that they are employed by the U.S. Attorney's Office, or that they engaged in any conduct that could be fairly attributable to the government. Rather, he only conclusory asserts that "[b]ecause . . . Howard and U.S. Prosecutors used Griffin & Associates L.L.C. to certify Mr. Moore's grand jury proceedings and illegally return a federal indictment against him, which is historically a function performed by the government or the state, can also be held liable with its owner Pamela Griffin for damages under 42 U.S.C. § 1983." ¶ 87. Because Griffin and Griffin & Associates are not state actors, the Court must dismiss Moore's claims against them.

7. <u>Moore's claims against Griffin and Griffin & Associates are time-barred.</u>

As stated, Moore alleges Griffin committed "abuse of process," denial of due process, and IIED; and Griffin & Associates committed "abuse of process" and IIED. The statute of limitations for these claims is two-years. *Doe v. Catholic Diocese*, 362 S.W. 3d 707, 717 (Tex. App.—El Paso 2011, no pet.) (two-year statute of limitations for IIED in Texas) *Somodevilla v. City of Dallas*, 2002 WL 1592602 (N.D. Tex. July 16, 2002) (two-year statute of limitations for denial of due process under § 1983); *Internet Corporativo S.A. de C.V. v. Bus. Software Alliance, Inc.*, 2004 WL 3331843, at *8 (S.D. Tex. Nov. 15, 2004) (two-year statute of limitations for abuse of process claim). And, absent tolling, "the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *LeBlanc v. City of Haltom City*, 2011 WL 2149908, at *5 (N.D. Tex. May 31, 2011) (quoting *Piotrowski*, 237 F.3d at 567).

Here, Griffin and Griffin & Associates transcribed the grand jury testimony in 2018. Moore also had knowledge of his alleged injuries by 2018—as evidenced by the letter he sent to the new Chief of Police for the Dallas Police Department outlining the conspiracy and injuries he suffered. *See* Am. Compl. ¶ 85 (The letter "advise[ed] [the Chief] of the [causes of action] against his civil rights."). Therefore, all his claims are barred by limitations.

However, Moore alleges that all his claims were tolled until his malicious prosecution claim became ripe—which, he contends, did not occur until the prosecution terminated in his favor in 2021. *See* Am. Compl. (citing *Price v. City of San Antonio*, 431 F.3d 890, 894 (5th Cir. 2005) (per curiam)). However, the Supreme Court in *Wallace*, abrogated *Price*, holding that "in circumstances where a § 1983 claim accrues **before** a criminal conviction is set aside" the statute of limitations on the already accrued § 1983 claim is **not** tolled. *Harris v. Rivera*, 2013 WL 246709 (N.D. Tex. Jan. 23, 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 394–95 (2007)); *see also*

*Humphreys v. City of Ganado*, 467 F. App'x. 252 (5th Cir. 2012) (holding the statute of limitations on [the plaintiffs'] claim for false arrest began running, at the latest, when he was indicted in July 2005 and not when the charges against him were dismissed in July of 2009); *LeBlanc*, 2011 WL 2149908, at *5 (McBryde, J.) (holding that "the reason given in *Wallace* for non-tolling of a § 1983 claim seeking damages for false arrest in violation of the Fourth Amendment applies equally to claims seeking damages for unconstitutional searches and seizures and related activities.").

Furthermore, even if Moore's claims were tolled until the prosecution terminated in his favor—the Court has determined that the prosecution terminated in Moore's favor in 2018. Therefore, with or without tolling—limitations expired on all of Moore's claims in 2020, two-years prior to Moore bringing this lawsuit. Hence, Moore's claims must be dismissed for this reason as well.

8. <u>Moore's conspiracy claims fail because his underlying § 1983 claims fail.</u>

"A conspiracy may be charged under § 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (cleaned up). "In order to prevail on a [§ 1983] conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). With respect to the second element, "a conspiracy claim is not actionable without an actual violation of section 1983." *Hale*, 45 F.3d at 920; *see also Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) ("No deprivation, no § 1983 conspiracy."); *Thomas v. State*, 294 F. Supp. 3d 576, 610 (N.D. Tex. 2018), *rec. adopted*, 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018) ("Section 1983 does not provide a cause of action for conspiracy to deny civil rights unless there is an actual violation of

civil rights."). Here, Moore's conspiracy claims must be dismissed because he has not plausibly pleaded an underlying constitutional deprivation by the Defendants.

### Conclusion

For the reasons stated, the Court DENIES Plaintiff Jayson Moore's motion to disqualify Howard's counsel (ECF No. 35), GRANTS the motions to dismiss filed by Defendants the City of Dallas, Detective Howard, Officer Webb, Judge Mitchell-Huff, and Pamela Griffin and Griffin & Associates LLC (ECF Nos. 14, 15, 19, 30, 38), and DISMISSES this civil action. The Court dismisses with prejudice Moore's claims against Detective Howard, Officer Webb, Judge Mitchell-Huff, and Griffin and Griffin & Associates; all other claims are dismissed without prejudice.

**SO ORDERED.**

March 17, 2023.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE